Charles Gene ROGERS and Dorothy
Hagwood Rogers, Plaintiffs,

v.

Sgt. J. C. FULLER et al., Defendants.

No. C–75–319–D.

United States District Court,
M. D. North Carolina,
Durham Division.

March 23, 1976.

Reginald L. Frazier, New Bern, N. C., for plaintiffs.

Alexander H. Barnes, Durham, N. C., T. Lawrence Pollard, Associate Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for defendants.

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

This matter came before the Court on the defendant Ray Freeman's motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and motion to dismiss pursuant to Rule 12(b), Federal Rules of Civil Procedure. Jurisdiction for this action is based upon 28 U.S.C. § 1331(a), 28 U.S.C. § 1343(3) and (4), and 42 U.S.C. § 1988.

The plaintiff characterizes this cause as "an action to redress the deprivation under Color of State law, statute, ordinance, regulation, custom or usage or rights privileges and immunities secured by the constitution and laws of the United States, The Fourth Amendment Title 18, U.S.C. Section 1503, and Title 42 U.S.C. Section 1981 and 1983." Although the plaintiffs and defendants differ markedly on their versions of the events which form the basis of this action, the following facts are undisputed: (1) The plaintiffs were arrested on March 27, 1975, and charged, among other things, with manufacturing and possessing heroin. (2) Law enforcement officers brought the heroin charges against the plaintiffs following a search of their house in Durham, North Carolina. (3) The plaintiffs were sentenced to prison on December 11, 1975, as a result of the arrest on March 27, 1975. The defendants in this action are law enforcement officers who are alleged to have taken part in the search of the plaintiffs' house and in their subsequent arrest. Defendant J. C. Fuller is a member of the Durham Police Department's Vice Squad Division; defendant E. E. Sarvis is a Public Safety Supervisor for the City of Durham; and defendant Ray Freeman is an assistant supervising agent for the North Carolina State Bureau of Investigation. The plaintiffs basically allege that the defendants, in the course of arresting them and bringing them to trial, committed the following transgressions: (1) Made an illegal search of plaintiffs' house; (2) Planted heroin, or caused it to be planted, in plaintiffs' house, thus leading to the plaintiffs' conviction; (3) Brutally assaulted the plaintiff Charles G. Rogers; (4) Destroyed a tape recording which reproduced the search of plaintiff's house and thus destroyed evidence which would have incriminated the law enforcement officers involved; (5) Stole $35,000 worth of rare coins from the plaintiffs; (6) Intimidated and harassed plaintiffs and caused Charles G. Rogers to be illegally arrested and

charged with the crime of perjury;[1] and (7) Caused to be published in a local newspaper an account of the plaintiffs' arrest in an attempt to influence any juror who might be empaneled to hear the plaintiffs' case.

The defendant Freeman first moved for summary judgment and submitted a number of affidavits in support of that motion. He later filed a separate motion to dismiss based upon different grounds.

## I. Motion for Summary Judgment

Affidavits were filed by the defendants Ray Freeman, J. C. Fuller, and E. E. Sarvis; L. Reece Trimmer, Legal Advisor to the Durham Police Department; R. D. Jarmon, C. E. Britt and C. H. Smith, members of the Durham Police Department's Vice Squad; H. K. Fletcher, a Public Safety Officer for the City of Durham; and Jerry Chesson, who, on March 27, 1975, was branch manager of the Horton Road branch of the Wachovia Bank and Trust Company in Durham. Affiants Fuller, Jarvis, Jarmon, Britt, Smith, and Fletcher were present at the plaintiffs' premises on March 27, 1975, and took part in the search of plaintiffs' house. Affiant L. Reece Trimmer drafted the search warrant which was executed at the plaintiffs' house and waited in a car outside while law enforcement officers went into the house.

According to the affidavits, each of which is similar to the other: (1) Sgt. J. C. Fuller requested Ray Freeman to assist him in the investigation of narcotics violations by the plaintiffs; (2) On March 27, 1975, Fuller, Jarvis, Jarmon, Britt, Smith, and Fletcher went to the plaintiffs' residence armed with a search warrant, executed the warrant, and arrested the plaintiffs; (3) Freeman was not present at the time of the search or arrest and did not participate in it but instead was then talking to Jerry Chesson at the Horton Road branch of Wachovia Bank concerning a safe deposit box which the plaintiffs had rented; (4) While talking to Chesson, Freeman was notified by telephone that a search of the plaintiffs' house was in progress; (5) Freeman at that time left the bank and travelled to the plaintiffs' house; (6) When Freeman arrived, he entered the residence pursuant to the search warrant already executed by Durham Police officers; (7) By that time, all search and seizure had taken place and Charles G. Rogers had been removed to the Durham County Jail; (8) Freeman did not participate in any search or seizure of the plaintiffs or their residence; (9) At no time did Freeman place any contraband either on the person or premises of the plaintiffs; (10) At no time did Freeman cause to be delivered any statements concerning the March 27, 1975, events to the local newspapers; (11) At all times Freeman was acting under lawful authority and in good faith.

The plaintiffs' response to defendant Freeman's motion contained no counter-affidavits and failed to set forth specific facts showing that there are genuine issues for trial. The affidavits submitted by Freeman, if accepted as truthful, would absolve him of liability.[2] Although law enforcement officers enjoy no absolute immunity from suit, they may nevertheless avail themselves of the defense of good faith. *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288, 296 (1967). Freeman has asserted a general good faith defense in addition to denying specific allegations. "When a motion for summary judgment is properly supported by affidavits, the adverse party may not rest upon the mere allegations of his pleadings, but

1. This allegation is directed to the defendant Fuller in particular. The arrest for perjury apparently grew out of statements made by Charles G. Rogers at his trial on the drug charges.

2. It might be argued that since Freeman has failed to specifically deny that he "caused" heroin to be planted in the plaintiffs' house as charged in the complaint, the affidavits are inadequate to absolve him of all liability. However, the Court reads the assertion that Freeman acted under "lawful authority" and in "good faith" as a general denial of any such flagrant conduct.

must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e)." *Kipps v. Ewell,* No. 75–1494 (4th Cir. March 3, 1976). Therefore, summary judgment in favor of the defendant Freeman is proper and will be granted.

## II. *Motion to Dismiss*

Were it not for the fact that Freeman's motion to dismiss [3] also has implications for the remaining defendants, the Court would go no further than to grant the motion for summary judgment. The defendant Freeman argues in his motion to dismiss that the constitutional deprivations asserted by the plaintiffs are integrally related to presumptively valid state court proceedings and that, therefore, the plaintiffs must first attack those proceedings through appeal and habeas corpus routes.

■ It is well settled that "[a] suit for damages under the civil rights statutes is improvidently brought when the asserted constitutional deprivation is an integral part of a presumptively valid state proceeding since the issue turns on the validity or invalidity of the conviction." *Macklin v. Circuit Court,* No. 75–1085 (4th Cir. Aug. 25, 1975); *Alexander v. Emerson,* 489 F.2d 285 (5th Cir. 1973); *Denney v. Kansas,* 436 F.2d 587 (10th Cir. 1971); *Smith v. Logan,* 311 F.Supp. 898 (W.D.Va.1970). "[T]he proper manner in which [a plaintiff in a case of this kind] may raise the alleged invasion of his constitutional rights is by a writ of habeas corpus. . . . [and] [b]efore a federal action for habeas corpus relief may proceed, . . . state court remedies must first be exhausted. 28 U.S.C. § 2254(b)." *Macklin v. Circuit Court, supra.*

The plaintiff in *Moore v. Frazier,* 316 F.Supp. 318, 320 (D.Neb.1970), brought a civil rights action against a deputy sheriff, among others, alleging that the deputy intercepted confidential conversation between the plaintiff and his attorney and communicated those conversations to the prosecution, thus contaminating the plaintiff's trial. The court asked this question:

May he pursue an action under the Civil Rights Act without first having his conviction invalidated by means of federal habeas corpus or pertinent state remedies? This court thinks not. To do so would permit the recovery of damages for an incarceration which at the time of the allowance of damages would be presumptively valid, because the incarceration continues and has not been attacked in any proceeding designed to release the prisoner from his incarceration. Furthermore, if the prisoner has not exhausted his state remedies for attacking his conviction, allowance of damages would effect a circumvention of the recognized doctrine of comity by which the courts of a state are permitted to test the validity of the conviction before the federal courts test such validity.

It is, of course, a prerequisite to dismissal of a civil rights action of this nature that the alleged constitutional deprivations be an integral part of a presumptively valid state proceeding:

The touchstone for any decision to defer a civil rights damage action which is parallel to state criminal proceedings is whether the federal court will be making rulings whose necessary implication would be to call in question the validity of the state conviction. Thus, not every situation where a section 1983 action is related to contemporaneous state proceedings will be one where completion of the state proceedings will appropriately be a prerequisite to trial of the federal claim. A denial of constitutionally protected rights may have occurred in

---

**3.** Although it is not entirely clear from a reading of the motion which Rule 12(b) grounds the defendant Freeman asserts, it appears he moves that the action be dismissed pursuant to either Rule 12(b)(1) or Rule 12(b)(6). Since the disposition of the case will be the same whether the motion is considered as one pursuant to Rule 12(b)(1) or Rule 12(b)(6), the Court will consider it to be a Rule 12(b)(6) motion.

the course of the events leading up to trial, yet may only be marginally relevant, or may even be entirely irrelevant, to the trial and appeal. *Guerro v. Mulhearn,* 498 F.2d 1249, 1254 (1st Cir. 1974).

■ The plaintiffs in this action have asserted a number of claims of constitutional deprivation which, with the exception of the claims of brutal assault and theft of $35,000 worth of rare coins, are integrally related to their state court criminal convictions and would "call in question the validity of the state conviction." *Guerro v. Mulhearn, supra,* at 1254. In light of the above-stated reasoning, those claims will be dismissed.

a. *The Alleged Assault*

■ The alleged assault by law enforcement officers, however, constitutes a claim of denial of a constitutionally protected right which "may have occurred in the course of the events leading up to trial, yet . . . [is] entirely irrelevant . . . to the trial and appeal." *Guerro v. Mulhearn, supra,* at 1254. Even if the assault did indeed occur, it would have no bearing whatsoever on the question of whether the plaintiffs committed the crimes with which they were charged. An alleged assault by law enforcement officers is a claim which is cognizable under 42 U.S.C. § 1983 and may therefore be considered by this Court. *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973). *Cf. Patterson v. Leeke,* 529 F.2d 516 (4th Cir. 1976).

b. *The Alleged Theft*

■ The claim that the defendants stole $35,000 worth of rare coins, although not integrally related to the plaintiffs' state court convictions, is nevertheless meritless as a federal civil rights claim. The plaintiffs have not claimed that the defendants misused their authority by confiscating the coins without justification. *See Russell v. Bodner,* 489 F.2d 280 (3rd Cir. 1973). They clearly charge that the defendants

"did without warrant or legal justification *steal and take* rare coins valuing over $35,000 which were then in the possession of the plaintiffs and are now uncounted [sic] for by the said intruding defendants." (Emphasis added). Complaint, ¶ 6. This Court is of the opinion that even if the evidence revealed that the defendants did steal the coins, they could not have done so under the color of state law which is necessary to maintain the claim. In the absence of evidence that a state body or organization has actually authorized a theft, the act of stealing, even by a police officer on duty and in uniform, is a personal, private pursuit by that officer and is not an act committed under color of state law. The court in *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975), enunciated the following criteria:

Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983. *Monroe v. Pape,* 365 U.S. 167, 185, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031 [1040], 89 L.Ed. 1495 [1507] (1945).

However, "[a]cts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Screws, supra,* at 111, 65 S.Ct. at 1040, [89 L.Ed. at 1507]. The fact that a police officer is on or off duty, or in or out of uniform is not controlling. "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Johnson v. Hackett,* 284 F.Supp. 933, 937 (E.D.Pa.1968). *See Robinson v. Davis,* 447 F.2d 753 (4th Cir. 1971), *cert. denied,* 405 U.S. 979, 92 S.Ct. 1204, 31 L.Ed.2d 254 (1972).

■ In *Johnson v. Hackett, supra,* the plaintiffs charged that the defendant police officers, while in uniform and on duty, made racially insulting remarks to them and challenged them to fight. The court, in holding that the alleged acts

were not committed under color of law, stated:

> United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 [1383] (1941), laid down the rule that
>
>> "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."

That the acts of the officers must be under "pretense" of law was stressed in *Screws v. United States,* 325 U.S. 91, p. 111, 65 S.Ct. 1031, p. 1040, 89 L.Ed. 1495 [p. 1507] (1945), wherein it was noted that "acts of officers in the ambit of their personal pursuits are plainly excluded."

The acts complained of here were not under "pretense" of law. They were not committed in the performance of any actual or pretended duty of policemen. They were not acts these defendants could not have committed but for the cloak of the state's authority. It is not alleged that the offer to fight was in any way related to the performance of police duties. *Johnson v. Hackett, supra,* at 937.[4]

*See Reed v. Philadelphia Housing Authority,* 372 F.Supp. 686 (E.D.Pa.1974). Therefore, the plaintiffs' claim relating to the theft of $35,000 worth of rare coins will be dismissed.

■ No defendant other than Freeman has moved to dismiss the plaintiffs' claims, and, in light of the fact that the Court has already granted Freeman's motion for summary judgment, it is not necessary to rule on his motion to dismiss. However, as explained previously, the Court is of the opinion that all of the plaintiffs' claims except for the claim of brutal assault should be dismissed. Therefore, the Court will, *sua sponte,*

dismiss those claims for failure to state a claim upon which relief can be granted. Wright & Miller, *Federal Practice and Procedure: Civil* § 1357. Thus, this action will proceed only against the defendants Fuller and Sarvis and only on the basis of the claim involving the alleged brutal assault.

Therefore, it is ORDERED that the defendant Freeman's motion for summary judgment be, and the same hereby is, GRANTED. It is further ORDERED that all of the plaintiffs' claims with the exception of the claim based upon the alleged brutal assault be, and the same hereby are, DISMISSED. A judgment will be entered accordingly.

---

**4.** As previously indicated, this Court feels that a state official may indeed commit acts which are so foreign to any authority vested in him by the state that he thus steps outside of the bounds of "color of law" in committing those

acts. Therefore, the Court does not agree with Professor Antieau that the reasoning in *Johnson* is "singularly unconvincing." J. Antieau, *Federal Civil Rights Acts, Civil Practice,* 54–55 (1971).