**IN RE John L. BEEGHLEY and Laura Beeghley, Debtor(s)**

**BANKRUPTCY NO. 97–12297 SR**

United States Bankruptcy Court, E.D. Pennsylvania.

Signed April 29, 2015

---

John J. Koresko, V, Koresko Law Firm, PC, Bridgeport, PA, Joseph F. Claffy, Joseph F. Claffy & Associates, P.C., West Chester, PA, for Debtors.

OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE. ·

## I. *INTRODUCTION*

Movant/Debtors seek to have their bankruptcy case reopened so as to have a variety of sanctions imposed upon husband debtor's ex-wife for violation of the Debtors' 2001 bankruptcy discharge injunction. Respondent/ex-wife opposes the relief and requests an award of sanctions in her favor. A hearing was held April 22, 2015. For the reasons which follow, the Debtors' Motion will be granted in part, and Respondent/ex-wife's request for sanctions will be denied.

## II. *BACKGROUND*

The Debtors filed this bankruptcy case in February 1997. They received a discharge in October 2001 and the case was

closed in March 2002. During the pendency of the case there was extensive litigation here involving prepetition divorce proceedings between Debtor John Beeghley and his ex-wife Barbara Beeghley, (hereinafter "Ms. Beeghley"). The couple's earlier 1993 state court divorce case had also featured extensive litigation between the spouses having to do, in part, with alimony, support and the division of assets. In State Court (The Family Court for the State of Delaware in and for New Castle County) relevant proceedings were docketed at CN 93–07390. After numerous hearings, an interlocutory "Civil Disposition" dated November 7, 1995 was entered with respect to many of the contested issues in that case.

The Civil Disposition at Section XIV ¶ 3 recites that the disposition was interlocutory and was not a final order of that Court. The disposition, however, directed that certain of husband's retirement assets be split 60% to Ms. Beeghley and 40% to Mr. Beeghley. The Disposition further directed the parties to timely prepare a Qualified Domestic Relations Order (QDRO) such that the presiding Judge could act thereon. No such order was ever prepared for, submitted to, or entered by the Delaware State Court.

Mr. Beeghley remarried. He and his wife filed a joint Chapter 13 bankruptcy case on February 26, 1997. In the Beeghley bankruptcy case, Ms. Beeghley filed a proof of claim on July 19, 1997 in the aggregate amount of $639,414.45. The basis for the claim, as reflected thereon was 1) goods sold; 2) personal injury/wrongful death; 3) other and 4) *retiree benefits*. (Emphasis added) After a lengthy hearing in December 1997, the Court entered an Order on January 20, 1998 which allowed the claim in the amount of $17,000 (for prepetition alimony arrears) but disallowed the rest. (Bankruptcy Docket Entry

# 84). Ms. Beeghley appealed the Bankruptcy Court decision to the District Court where it was docketed at # CV 98–919. On March 13, 1998 the appeal was dismissed and the appellate case was closed. Ms. Beeghley filed a Motion for re-argument on March 23, 1998, which was denied by Order of the District Court dated May 8, 1998.

On May 15, 1998, this Court entered an Order Confirming the Debtors' Chapter 13 Plan over the Objection of Ms. Beeghley. She appealed the plan confirmation Order to the District Court where it was dismissed by Order dated June 12, 1998. The Beeghleys thereafter completed their Chapter 13 Plan. An Order granting both Debtors a bankruptcy discharge was entered on October 9, 2001. On March 15, 2002 the Beeghley bankruptcy case was closed.

At various times prior to January 1998, and thereafter, Ms. Beeghley had filed numerous other appeals and related pleadings in the District Court. All of them were consolidated with a Civil Rights Action Ms. Beeghley filed in the District Court on October 19, 1998 at CV 98–05527. The Civil Rights Action named Ms. Beeghley as Plaintiff and both debtors herein as Defendants. In the Civil Rights action Ms. Beeghley again raised the issue of an entitlement to a portion of her ex-husband's retirement assets. By Order dated April 28, 1999, the District Court dismissed a plethora of motions filed by Ms. Beeghley in CV 98–05527, declaring them to be frivolous and barred by the doctrines of collateral estoppel and *res judicata*. As a sanction for the filing of "duplicative and frivolous" motions and lawsuits, the Order of April 28, 1999 also permanently enjoined Ms. Beeghley from filing any further pleadings in the District Court without an Order of the District Court expressly permitting the same. CV

98–05227 was closed on November 19, 2000.

Ms. Beeghley appealed the District Court's April 28, 1999 Order to the Third Circuit Court of Appeals. In an Opinion dated March 21, 2002, the Circuit vacated portions of the April 28, 1999 Order, and remanded the case, as follows:

> For the foregoing reasons, we will vacate those parts of the order entered on April 28, 1999 that (1) sanction Plaintiff; and (2) deny her requested relief regarding *only* the retirement fund discharge issue. All other portions of the order remain in effect. The matter is remanded to the District Court to freshly address the question of sanctions and to rule on the merits of the retirement fund dischargeability question.

The District Court reopened CV 98–05527 on April 12, 2002.

With regard to the retirement fund question, the Circuit Court noted the aforementioned November 7, 1995 Civil Disposition in the State of Delaware Family Court and its provisions that Mr. Beeghley's interest in a saving investment plan (SIP) and a tax reform stock ownership plan (TRASOP) should be split 60% to Ms. Beeghley and 40% to Mr. Beeghley. The Circuit Court also noted that the State Court had directed the parties to timely prepare and submit to it a QDRO under the provisions of 29 U.S.C. § 1056.

As hereinbefore noted, the Family Court Civil Disposition indeed so provided. With respect to the retirement funds the Family Court stated that they were to be divided as of the date of the couples' separation. Again, however, with respect in particular to the QDRO, the Family Court stated that. "... Counsel are directed to timely prepare the appropriate QDROs such that this Judge may act thereon."

As noted, contrary to the latter admonition, no QDRO was ever prepared for, submitted to, or entered by the Family Court in Delaware. Time passed. A few years later Ms. Beeghley sent a copy of the Family Court's November 7, 1995 Civil Disposition to Mr. Beeghley's employer, The Dupont Company. She received in reply a letter dated February 19, 1998. (See Docket Entry # 272 Attachment 3) The reply informed her that the Civil Disposition did not meet the requirements for a QDRO as set forth in ERISA and that no action could be taken by Dupont based upon it. The letter further advised that the Company TRASOP had been terminated in March 1995 and that all plan assets had been distributed to participants at that time. *Id.*

Meanwhile, in the reopened District Court Action (CV–98–05527) the Court scheduled and held telephonic pretrial conferences with the parties as reflected on the District Court Docket at entry numbers 33, 34, 35 and 36. The docket reflects that nothing then occurred in the District Court for over 2½ years. On December 16, 2004 the District Court sent notice to both parties that the case would be dismissed with prejudice for lack of activity pursuant to Local Rule of Civil Procedure 41.1(a). On January 4, 2005 CV 98–05527 was terminated in the District Court.

On June 30, 2005 Ms. Beeghley had her Delaware State Divorce Case registered as a foreign divorce in the Delaware County, Pennsylvania Family Court. The case is docketed there at # 2005–007434. The State Court action lay dormant until December 27, 2011, when Ms. Beeghley filed certain documents entitled 1) *To Recognize and Preserve Alternate Payees I Interest For A Qualified Domestic Relations Order And To Enjoin John Beeghley From Removing And Dissipating Petitioners Assets (sic)* and 2) *Letter of Good Faith*

*Intentions And Explanation Of Delay In Filing QDRO. See* Ms. Beeghley's response to the present motion, attachment # 2.

The Delaware County action again went dormant until October 2014 when Ms. Beeghley filed a pleading entitled "Motion for Contempt of Court Order and Violation of Fiduciary Duties." *See* Debtors' Motion herein at Exhibit "C." The Motion identifies Ms. Beeghley as the "Petitioner/Alternate Payee" and identifies Mr. Beeghley as the "Respondent/Participant." The Motion was served on Mr. Beeghley sometime in late 2014. According to Mr. Beeghley, this was the first pleading in the 2005 action ever served upon him. Transcript of Hearing (Tr.) April 22, 2015 at 3. Ms. Beeghley has not disputed that.

In her 2014 Motion Ms. Beeghley recites a litany of wrongs allegedly visited upon her by her ex-husband, including efforts by him to thwart enforcement of an equitable distribution order. She asks for unspecified compensatory and punitive damages.

On March 25, 2015, Mr. Beeghley filed the present motion in this Court. Ms. Beeghley filed a response on April 7, 2015 and, as noted, a hearing was held on April 22, 2015.

### III. *DISCUSSION*

At the April 22, 2015 hearing it was established that John and Laura Beeghley are presently debtors in a Chapter 13 case filed in this Court on July 2, 2010. The case is docketed at # 10–15487 and is presided over by Judge Magdeline D. Coleman. The debtors' Chapter 13 plan in that case was confirmed on May 31, 2012. It was further established that Ms. Beeghley was not listed as a creditor in the Beeghleys' current bankruptcy case, nor has she participated in it. No discharge has been entered in the current case and the case remains open. Debtors filed a suggestion of bankruptcy in the Delaware County Family Court case on March 31, 2015. That case also remains open.

Ms. Beeghley's response to the present Motion sets forth, *inter alia,* an obdurate insistence that despite two adverse decisions in the Federal Courts over the issue of her entitlement to certain of her ex-husband's retirement assets, the issue remains viable such that she is at liberty to pursue it via the pending Delaware County Family Court action. As explained during the course of the April 22, 2015 hearing, the Court disagrees.

At the outset, the Court emphasizes that to describe the Beeghley divorce case as contentious would be a vast understatement. Three separate Courts have attributed the responsibility for that primarily to Ms. Beeghley and barred her from filing further pleadings without permission.

The first bar came from the State of Delaware Family Court. In its November 7, 1995 Civil Disposition, that Court described the case at that time as having reached "legendary proportion." That same decision is replete with findings detailing what the Court expressly characterized as Ms. Beeghley's abuse of the judicial process. In this respect, the presiding Judge noted, among many other things, that Ms. Beeghley had expressed a perverse pride in having managed to carry on 14 years of litigation in connection with the ending of an earlier marriage, and that in connection with her marriage to Mr. Beeghley, she was possessed of an " ... obstinate, tenacious, unrelenting, unyielding desire to destroy her former husband." *See* Civil Disposition, 13.

The second litigation bar was from this Court, which in its January 20, 1998 Order similarly found Ms. Beeghley to be at

fault, and found her conduct to be obsessive and irrational.

Finally, the District Court in its Order of April 28, 1999 likewise sanctioned Ms. Beeghley for filing duplicative and frivolous motions and entered a bar against her.

While not dispositive in itself, the backdrop of this case is relevant, and certainly counsels at the very least a careful review of the present circumstances. In this respect the Court finds the present circumstances to be that Ms. Beeghley's pursuit of her husband's retirement assets is at this late date barred, it having been the specific subject of two separate federal court proceedings, each of which resulted in a determination adverse to her.

To recapitulate, Ms. Beeghley set forth, as a component of her proof of claim in the first Beeghley bankruptcy case, a claim to retirement benefits, interlineating on the face of the claim form the words: (QDRO) Court Order, SIP, TRASOP. After the Debtors objected to this claim, this Court stated that the issues would probably have best been presented to the Delaware State Family Court, given its extensive familiarity with the Beeghley divorce case. The fact remains, however, that this did not happen. A lengthy hearing was instead held on Ms. Beeghley's claim. It resulted in this Court's January 20, 1998 decision wherein the Court found, *inter alia*, that the evidence offered by Ms. Beeghley in support of her claim was without merit, and disallowed all but $17,000 of the $639,414.45 claim. Having reviewed the file the Court notes, in particular, that while the Civil Disposition was part of the record, there was no QDRO, (one never having been prepared); that there was no final order from the Delaware State Court; that there were no documents as to the Dupont TRASOP, (it having been terminated months before the Delaware State Court's "Civil Disposition" was even issued); and finally that there was no documentary evidence presented relative to a the funds, if any, in Mr. Beeghley's savings investment plan as of the date of the couple's separation.

■ Ms. Beeghley appealed this decision, but as noted, her appeal was dismissed. The Bankruptcy Court decision is thus a final disposition as to the "claim" Ms. Beeghley presented in this case and it is entitled to preclusive effect under the doctrine of *res judicata*.

■ Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same "cause of action" as the first suit. *See In re Mullarkey*, 536 F.3d 215, 225 (3d Cir.2008). A party seeking to invoke res judicata must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* (quotation marks omitted). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *Id.*

*Duhaney v. Attorney General of U.S.*, 621 F.3d 340, 347 (3rd Cir.2010).

All 3 of the aforedescribed required elements of *res judicata* are present here. Accordingly, Ms. Beeghley's entitlement to retirement assets, insofar as it was pressed as a "claim" in this bankruptcy case was discharged and is barred now from relitigation.

In so holding the Court is cognizant that Ms. Beeghley renewed a claim to her ex-husband's retirement assets via the civil rights action she later filed in the District Court, and further that the Circuit Court directed the District Court to "rule

on the merits" of the retirement fund dischargeability question. As discussed, the District Court acted promptly to comply with that mandate. The matter, however, was abandoned and ultimately dismissed for inactivity. It is well established that an *involuntary* dismissal has preclusive effect. Eastern District of Pennsylvania Local *Rule* 41.1(a) provides that where a case has been inactive for over one year, that case, after notice, will be dismissed with prejudice. The dismissal of an action with prejudice constitutes an adjudication of the merits as fully and completely as if the Order had been entered after trial. *See Elkadrawy v. Vanguard Group, Inc.,* 584 F.3d 169, 173 (3d Cir.2009) (citation omitted); *See, e.g., Color–Plus Leather Restoration Sys., L.L.C. v. Vincie,* 198 Fed.Appx. 165, 167 (3d Cir.2006) (affirming dismissal of second action, based on *res judicata,* after first action was dismissed for failure to prosecute) (citations omitted); *Marin v. Department of Defense,* 145 Fed.Appx. 754, 755–56 (3d Cir. 2005) (same); *Gambocz v. Yelencsics,* 468 F.2d 837, 840 (3d Cir.1972) Accordingly, although Ms. Beeghley has argued, and continues to argue, that the facts of her situation implicate a distinction between a dischargeable "claim" versus a non-dischargeable "interest," the fact is that the "retirement fund dischargeability question" has been fully and completely adjudicated against her in District Court Civil Action 9805527. The principles of claim preclusion accordingly bar the relitigation of that question in the action pending in the Delaware County Family Court.

■ Even were evidence of the foregoing not overwhelmingly clear, the same result would obtain under the doctrine of laches. The elements of laches are (1) lack of diligence by the plaintiff(s), and (2) prejudice to the defendant(s) as a result of the delay. *E.E.O.C. v. Great Atl. & Pac. Tea Co.,* 735 F.2d 69, 80 (3d Cir.1984).

■ The record contains substantial evidence to support application of the doctrine of laches as to Ms. Beeghley. To recapitulate, the Beeghley divorce case is twenty two (22) years old. The Interlocutory Civil Disposition from the Delaware State Family Court was issued 20 years ago. Its directive for the prompt submission of a QDRO was ignored. Roughly 2 years later Ms. Beeghley opted to pursue her ex-husband's retirement assets via a proof of claim in this bankruptcy case. When that failed she commenced a civil rights action which was dismissed with prejudice in 2004 after 2½ years of inactivity. Six months later, on June 30, 2005, she registered her Delaware Divorce proceeding in the Delaware County Court of Common Pleas. But for a pair of pleadings filed in 2011, which were never served on her ex-husband, the Delaware County matter then laid dormant for over 9 years.

The Court specifically addressed this long delay with Ms. Beeghley on the record at the hearing held on April 22, 2015. Tr. at 8. Her reply, to paraphrase it, was to blame attorneys who had represented her over the years and her own misunderstanding as to how they did things in Delaware County. *Id.* at 5, 8. Ms. Beeghley professed to be unaware that the Civil Rights Action in the District Court had been dismissed. *Id.* at 15.

Against this backdrop the Court finds both elements of laches to be present. Bare assertions of confusion and ineffective lawyers cannot explain away over 2½ years of inactivity in the District Court civil rights action, and certainly cannot explain away nearly a decade of inactivity in the Delaware County Family Court case. Prejudice to the Debtors likewise appears clear. Ms. Beeghley's ex-husband and his wife have moved on with their

lives. One could surmise, however, that they have not entirely prospered, given that they filed another Chapter 13 reorganization case in 2010. Further to the point, however, there appears to be no reason for the couple to have anticipated having to revisit Mr. Beeghley's divorce case. Any attempt to do so, moreover, would be like trying to unscramble an egg. This is hardly a zero sum game. For instance, the Delaware State Civil Disposition provided for the division of a company TRASOP, when that asset no longer even existed. How that would be accounted for is but one question among many others. There is no evidence as to how, or even whether, the many other terms of the interlocutory civil disposition were carried out. A record to that effect would have to be created. That would entail considerable time and expense, if it could be accomplished at all. The interlocutory Order would need to be finalized and a retroactive accounting, with valuations and credits for terms satisfied or incomplete, would be required. It is highly doubtful that a couple in bankruptcy, or anyone else for that matter, could easily undertake such an endeavor after the passage of so many years. Ms. Beeghley, on the other hand, appears to relish that prospect along with the possibility that in a new tribunal she can wage war with her ex-husband anew. To permit that would be a serious miscarriage of justice.

Congress has not provided a statutory mechanism for the enforcement of the discharge injunction. Therefore, courts have long relied upon the common law remedy of civil contempt. *See, e.g., Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir.2002); *Matter of National Gypsum Co.,* 118 F.3d 1056, 1063 (5th Cir.1997); *Bynum v. Cavalry Portfolio Services, L.L.C.,* 2006 WL 1401619, at *2 (N.D.Okla. May12, 2006); *In re Elias,* 98 B.R. 332, 337 (N.D.Ill.1989); *In re McNeil,* 128 B.R.

603, 607 (Bankr.E.D.Pa.1991) ( "Enforcement of § 524 may include holding violators in contempt of court for attempts to collect discharged debts."); *In re Wagner,* 87 B.R. 612 (Bankr.C.D.Cal.1988).

The Court finds Ms. Beeghley in civil contempt for violation of the bankruptcy discharge injunction. Nevertheless, despite what the Court believes to be disingenuous and pretextual arguments advanced by Ms. Beeghley, the Court will limit the sanction imposed on her herein to an injunction against any further attempts by her to relitigate the precluded issue discussed herein, either through the continued prosecution of the 2005 action pending in the Delaware County Family Court, or in any other action, in any other Court. The Court will, in turn, deny Ms. Beeghley's own request for sanctions. The Court does this with the hope that such disposition will bring finality to this matter and allow all parties to get on with their lives.

An appropriate order follows.

### ORDER

AND NOW, upon consideration of the Debtors' Motion to Reopen Case for Violation of Discharge Injunction, for Findings of Contempt and Imposition of Sanctions, the Response of Barbara Beeghley thereto, and after hearing held April 22, 2015, it is hereby:

ORDERED, that the Motion is granted in part, and denied in part. The instant bankruptcy case is reopened for the limited purpose of addressing the matters raised by the Debtors in their Motion and affording appropriate relief; and it is further:

ORDERED, that for the reasons stated in open court and contained in the within Opinion, Respondent, Barbara Beeghley is held to have violated the Discharge Injunc-

tion set forth in 11 U.S.C. § 524 by attempting to relitigate precluded issues in the action entitled *Barbara Beeghley vs. John Beeghley* pending at Docket No. 05–007434 in the Delaware County, Pennsylvania Family Court; and it is further:

ORDERED, that for the reasons stated in open Court, and contained in the within Opinion, Respondent Barbara Beeghley is hereby permanently enjoined from the continued prosecution of that action, or any other action, in any other court, to the same end, and it is further:

ORDERED, that Ms. Beeghley's request for sanctions is denied and it is further:

ORDERED, that upon the docketing of this Order, this bankruptcy case shall be reclosed.